# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DAVID QUICHIMBO SUMBA, MIRIAN XIMENA ABARCA TIXE, and CAMILA MARGARITHA QUICHIMBO ABARCA,<br><br>Petitioners,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>Respondents | Case No. 25-12365<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Mirian Ximena Abarca Tixe ("Mirian") is a national of Ecuador, who entered the United States in June 2021 through the Texas border with her husband Juan David Quichimbo Sumba ("Juan") and their daughter, CMQA. They were initially apprehended by Customs and Border Patrol (CBP), and were ultimately released on Recognizance on June 29, 2021. *See* Notice of Custody Determination, June 29, 2021. A second Notice of Custody Determination was issued on July 1, 2021, requiring Juan to enroll in Alternatives to Detention (ATD). *See* Notice of Custody Determination, July 1, 2021.

2. Upon release, Juan began regular check-ins with Immigration and Customs Enforcement (ICE) at their Framingham, Massachusetts office. He was eventually fitted with a GPS device as part of the enrollment in ATD, which placed him under the care and custody of ICE.

1

3. The Respondents hired Attorney Ernest Atalay of Kew Gardens, New York, to represent them in their removal proceedings shortly after their entry into the United States. Attorney Atalay submitted very little to support the Respondent's timely asylum claim: he submitted the asylum application, a singular three-page declaration from the Lead Respondent, and the Respondents' identification documents. The submission was insufficient to even prove the Respondents' familial ties, as there was no birth certificate included for CMQA, nor a wedding certificate for Juan and Mirian, which is essential to prove derivative asylum status for Mirian and CMQA.

4. On October 14, 2022, Attorney Atalay presented the Respondents' asylum application to the Immigration Court in New York. The Immigration Judge ultimately denied the applications for asylum, withholding of removal, and protection under the Convention Against Torture, and the Respondents reserved their appeal. The appeal was due at the Board of Immigration Appeals on or before November 13, 2022. However, despite the Respondents making the required filing fee payment to Attorney Atalay, he did not file the notice of appeal until July 21, 2023.[1] In support of his motion to allow late filing, Attorney Atalay provided a declaration, which stated that due in no part to negligence by Juan or his family, Attorney Atalay neglected to file the notice of appeal despite receiving the payment for such. It was not until Juan was informed by Immigration and Customs Enforcement ("ICE") officers in July 2023 at his check-in that Attorney Atalay took action to appeal the denial of their relief application.[2] ICE then fit Juan with a GPS device for supervision due to the removal order. Upon learning of this, Attorney Atalay told Juan that he would file a Motion to Reopen. On this representation, ICE removed the GPS and gave Juan thirty days

---

[1] *See* Motion to Allow Late Filing; and, BIA Decision Dismissing Appeal, attached as Exhibit 1
[2] *See* Prior Counsel's Declaration in Support of Motion to Allow Late Filing, attached as Exhibit 1.

2

to speak with his attorney and make a filing. Due to the lack of due diligence or extraordinary circumstances, the Board of Immigration Appeals ("BIA") dismissed the Respondents' appeal as untimely on October 6, 2023.[3] In July 2024, ICE again placed a GPS on Juan, and he remains fitted with the GPS to this day.

5. On May 3, 2024, Juan and Mirian had a consultation with the undersigned counsel's office. It was then that he disclosed a labor trafficking incident that he had endured in the United States. At the time of consultation, it was unclear whether Juan's Notice to Appear ("NTA") was ever filed with any immigration court, as it did not appear on the Electronic Case and Appeal System to file a Motion to Reopen, the Automated Case Information System, nor in his FOIA. Juan was under the impression from previous counsel and ICE that his notice to appear had not been filed, and only his wife, Petitioner, and daughter had removal orders.

6. With the help of undersigned counsel, Juan applied for T Nonimmigrant Status, with Mirian and CMQA as derivatives, and reported the labor trafficking to the Department of Labor to be investigated. On July 25, 2024, undersigned counsel reported labor trafficking on Mr. Quichimbo's behalf to the Department of Labor and thereafter filed his T Visa Nonimmigrant Petition.[4] This petition is still within normal processing times with the United States Citizenship and Immigration Services ("USCIS").

7. On June 3, 2025, both Mirian and Juan were called into ICE to report the next morning. This was not normal, as he has his yearly check-ins during July. Undersigned counsel accompanied the Respondents to ICE for their check-in. At the check-in, counsel was informed by an ICE officer that everyone who was called in that day was called in to

---

[3] *See* BIA Decision, Exhibit 1
[4] *See* Report of Labor Trafficking to Department of Labor and I-914 and I-912 Receipts, Exhibit 2.

arrange departure plans. Counsel was told that due to the pending T Visa Application that the Respondents could leave that day without presenting a departure plan, but that proof of the receipts would not "save them" if ICE stopped them in the community.

8. On June 11, 2025, only Juan was demanded to come into the ICE office the next day. During this check-in, undersigned counsel accompanied Mr. Quichimbo. It was then that Counsel was informed of ICE's desire for the parties to leave the United States within one week. Anticipating that the couple would be detained at this check-in, counsel filed a Habeas Petition, challenging the requirement to depart when Juan's NTA was never filed with any immigration court.

9. It was later discovered that despite the NTA not appearing in his FOIA or on any court system, it was filed by the Department of Homeland Security at some point before the individual hearing, and the removal order that was thought to be just for Mirian and CMQA also included Juan. Therefore, undersigned counsel voluntarily withdrew the prior habeas petition and filed a Motion to Reopen Proceedings for ineffective assistance of counsel. That motion, initially improperly rejected for lack of immigration court jurisdiction, is currently being re-considered on a Motion to Reconsider.

10. On August 25, 2025, ICE demanded that Juan report to ISAP in Framingham on the same day because they had been informed that the Habeas petition had been dismissed. Juan asked for time to talk to his attorney and prepare transportation, and in response ICE demanded that Miran also come with him the next day to the check in. The ICE officer informed undersigned counsel that they would be made to produce departure tickets to Ecuador to leave the weekend of August 29, 2025. Explicit guarantees were made multiple

4

times to counsel by the ICE officer over the phone on August 25, 2025, that neither Mirian nor Juan would be detained upon checking in, but would instead be given a departure plan.

11. On August 26, 2025, undersigned counsel's office accompanied Mirian and Juan to ISAP in Framingham. It was there that they were told to purchase tickets to depart and were set on a weekly check-in schedule.

12. After departing the ISAP office, undersigned counsel received a call from an ICE officer asking if Mirian and Juan were on their way to the Enforcement Removal Operations (ERO) office in Burlington, MA. Counsel stated she was not aware of such a request but would ask them to turn around to report there.

13. Upon reporting at the Burlington, MA ERO office, Mirian was detained by ICE. The reason given for detention: that she "has a warrant and a final removal."

14. On information and belief, Respondents detained the Petitioners and intend to removed her from the jurisdiction.

15. Accordingly, to vindicate Petitioner's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus.

16. Petitioner asks this Court to find that the Respondents have unlawfully detained the Petitioner and order her release, or in the alternative, afford her a prompt bond hearing.

## JURISDICTION

17. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

19. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

20. Venue is proper because Petitioner is detained at ICE ERO Office in Burlington, MA, which is within the jurisdiction of this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

21. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

22. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

23. The Petitioner, Mirian Ximena Abarca Tixe ("Mirian"), is a national of Ecuador. She resides in Springfield, Massachusetts. Petitioner pending relief from removal in front of USCIS in the form of T Nonimmigrant Visa and most importantly, a pending Motion to Reopen Removal Proceedings and Stay Removal in front of the New York Varick Street Immigration Court.

24. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

25. Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement.

26. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

27. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

28. All respondents are named in their official capacities.

29. On information and belief, the Petitioner was detained at the ICE ERO Burlington Office on August 26, 2025, at her short-notice check-in.

30. On information and belief, Petitioner is currently in custody in the District of Massachusetts, and one or more of the Respondents is their immediate custodian.

**STATEMENT OF FACTS**

31. Petitioner, Mirian Ximena Abarca Tixe ("Mirian") is a national of Ecuador, who entered the United States in June 2021 through the Texas border with her husband Juan David Quichimbo Sumba ("Juan") and their daughter, CMQA. They were initially apprehended by Customs and Border Patrol (CBP), and were ultimately released on Recognizance on June 29, 2021.

32. The Respondents hired Attorney Ernest Atalay of Kew Gardens, New York, to represent them in their removal proceedings shortly after their entry into the United States. Attorney Atalay submitted very little to support the Respondent's timely asylum claim: he submitted the asylum application, a singular three-page declaration from the Lead Respondent, and the Respondents' identification documents. The submission was insufficient to even prove

the Respondents' familial ties, as there was no birth certificate included for CMQA, nor a wedding certificate for Juan and Mirian, which is essential to prove derivative asylum status for Mirian and CMQA.

33. On October 14, 2022, Attorney Atalay presented the Respondents' asylum application to the Immigration Court in New York. The Immigration Judge ultimately denied the applications for asylum, withholding of removal, and protection under the Convention Against Torture, and the Respondents reserved their appeal. The appeal was due at the Board of Immigration Appeals on or before November 13, 2022. However, despite the Respondents making the required filing fee payment to Attorney Atalay, he did not file the notice of appeal until July 21, 2023. In support of his motion to allow late filing, Attorney Atalay provided a declaration, which stated that due in no part to negligence by Juan or his family, Attorney Atalay neglected to file the notice of appeal despite receiving the payment for such. It was not until Juan was informed by Immigration and Customs Enforcement ("ICE") officers in July 2023 at his check-in that Attorney Atalay took action to appeal the denial of their relief application. ICE then fit Juan with a GPS device for supervision due to the removal order. Upon learning of this, Attorney Atalay told Juan that he would file a Motion to Reopen. On this representation, ICE removed the GPS and gave Juan thirty days to speak with his attorney and make a filing. Due to the lack of due diligence or extraordinary circumstances, the Board of Immigration Appeals ("BIA") dismissed the Respondents' appeal as untimely on October 6, 2023. In July 2024, ICE again placed a GPS on Juan, and he remains fitted with the GPS to this day.

34. With the help of undersigned counsel, Juan applied for T Nonimmigrant Status, with Mirian and CMQA as derivatives, and reported the labor trafficking to the Department of

Labor to be investigated. On July 25, 2024, undersigned counsel reported labor trafficking on Mr. Quichimbo's behalf to the Department of Labor and thereafter filed his T Visa Nonimmigrant Petition. This petition is still within normal processing times with the United States Citizenship and Immigration Services ("USCIS").

35. Undersigned counsel filed a Motion to Reopen Proceedings for ineffective assistance of counsel pursuant to *Matter of Lozada* with the New York Varick Immigration Court, which was received on July 18, 2025. That motion, initially improperly rejected for lack of immigration court jurisdiction, is currently being re-considered on a Motion to Reconsider, which was received on August 19, 2025, and remains pending to date.

36. On August 25, 2025, undersigned counsel filed an Emergency Motion to Stay Removal to the immigration court, which also remains pending.

37. On August 26, 2025, Mirian was detained by ICE at the ICE ERO Burlington office after successfully completing the demanded check-in at ISAP in Framingham, MA.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of Fifth Amendment Right to Due Process and Violation of 8 U.S.C. § 1231**

38. The allegations in the above paragraphs are realleged and incorporated herein.

39. Petitioner's detention violates her right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution. The substantive component of the Due Process Clause of the Fifth Amendment to the United States Constitution protects Petitioner's liberty interests. Petitioner has a substantive liberty interest in remaining with her husband and child. Petitioner is suffering grave harm due to her unjustified and unlawful detention.

40. The procedural component of the Due Process Clause of the Fifth Amendment to the United States Constitution prevents the Respondents from depriving Petitioner of liberty without procedural protections.

41. Upon information and belief, ICE maintains a policy and practice of transferring noncitizen detainees to immigration detention centers located far from the geographical areas where they were initially apprehended. These transfers frequently occur without adequate notice to the detainee or legal counsel, and often result in significant barriers to legal representation, communication, and access to evidence. Petitioner will use an interpreter to effectively communicate with counsel and potential witnesses. To prevent access to in-person legal representation is a violation of her right to counsel.

42. Furthermore, Petitioner currently has a meritorious claim for ineffective assistance of counsel currently pending in front of the immigration court, and to move her from district and deprive her of legal counsel during this time would be especially cruel.

43. There has been no determination given to Petitioner or counsel under 8 U.S.C. § 1231 to assert that Mirian is a flight risk or a danger to the community, the threshold requirement to detain Petitioner after the initial 90-day removal period. The Respondents decision to detain Mirian, an individual initially released by ICE upon entry on her own recognizance, not enrolled in ATD, and never alleged to have violated a condition of release, is in clear violation of her due process rights.

44. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231.

(4) Issue a Writ of Habeas Corpus ordering Respondents to release the Petitioner immediately, or in the alternative, schedule a bond hearing before an immigration judge.

(5) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6) Grant any further relief this Court deems just and proper.

Respectfully submitted,
Mirian Ximena Abarca Tixe, and
By Her Attorney,

/s/ *Elizabeth Shaw*
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com

Date: 8/26/2025

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Mirian Abarca Tixe, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 26 day of August, 2025.

/s/ *Elizabeth Shaw*
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com