**Elizabeth Shaw, Esq. | BBO #: 713541**
**Law Offices of Rachel L. Rado, LLC**
**175 Portland Street, 2nd Floor.**
**Boston, MA 02114**
**(t) 617-871-6030 | (f) 877-246-8795**
**(e) eshaw@rachelradolaw.com**

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MIRIAN XIMENA ABARCA TIXE,<br><br>　　　　　Petitioner<br><br>v.<br><br>WARDEN, Elizabeth Contract Detention Facility;<br>PATRICIA HYDE, Field Office Director;<br>MICHAEL KROL, HSI New England Special Agent in Charge; TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement; and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>　　　　　Respondents | Case No. 25-12365<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION** |

**I.    EXECUTIVE SUMMARY – RESPONDENTS ARE IN VIOLATION OF THIS COURT'S ORDER (DOC. NO. 4)**

The Petitioner, through undersigned counsel, respectfully moves this Honorable Court for an immediate Temporary Restraining Order (TRO) and Mandatory Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and the inherent power of this Court to enforce its orders.

On August 26, 2025, this Court issued an Order that explicitly prohibited the transfer of the Petitioner to another district without advance notice. The Order stated:

> Petitioner shall not be transferred to another district unless the government provides advance notice of the intended move. Such

> notice shall be filed in writing on the docket in this proceeding and shall state the reason why the government believes that such a movement is necessary and should not be stayed pending further court proceedings. Once that notice has been docketed, the petitioner shall not be moved out of the District for a period of at least 72 hours from the time of that docketing. . . Petitioner shall not be deported, removed, or otherwise transferred outside the United States until further Order of this Court. Doc No. 4.

On or about October 13, 2025, the Respondents violated the aforementioned Order by transferring the Petitioner out of the district without providing any advance notice to the Court or to counsel. This emergency relief is necessitated by the willful and contemptuous violation of this Court's explicit Order Concerning Service of Petition and Stay of Transfer or Removal (Doc. 4, filed August 26, 2025). Respondents, acting without providing the required advance written notice, docket filing, or the mandatory 72-hour delay, unlawfully transferred the Petitioner from her agreed-upon detention location at Elizabeth Contract Detention Facility in Elizabeth, NJ, to the remote Port Isabel Detention Center, TX, thousands of miles away. A written notice of the intended move was not filed on the docket prior to these transfers, and the Petitioner was not provided the mandatory 72-hour period before being moved.

The Respondents' actions disregarded the Court's clear instructions and caused unnecessary distress and disruption to the Petitioner. This blatant violation of a court order demonstrates a lack of respect for this Court's authority. This unauthorized transfer constitutes a deliberate attempt to sever the Petitioner's access to counsel in the District of Massachusetts, frustrate the judicial process, and moot the underlying petition for a writ of habeas corpus challenging her detention under 28 U.S.C. § 2241.

**WHEREFORE**, Petitioner prays that the court enter an order:

1. Immediately restraining Respondents and all persons acting in concert with them from taking any further action to transfer, remove, or deport Petitioner Mirian Ximena

  Abarca Tixe from the Port Isabel Detention Center, TX, or any other facility, pending further order of this Court.

2. Issuing a mandatory injunction compelling Respondents to immediately initiate and execute the return transfer of Petitioner Mirian Ximena Abarca Tixe to the Elizabeth Contract Detention Facility in Elizabeth, NJ, or another mutually acceptable facility readily accessible to her current Massachusetts counsel, within 72 hours of the issuance of this Order.

3. Waiving the requirement of security under Federal Rule of Civil Procedure 65(c).

4. Setting a hearing on Petitioner's Motion for a Preliminary Injunction at the earliest possible date.

## II. INTRODUCTION AND SUMMARY OF RELIEF SOUGHT

This emergency motion is filed in response to a flagrant breach of judicial authority by officials of the U.S. Immigration and Customs Enforcement (ICE). On August 26, 2025, this Court issued an Order (Doc. 4) governing the service of the habeas corpus petition and, crucially, imposing a strict Stay of Transfer or Removal. This protective order was explicitly designed to ensure the Court retained oversight and jurisdiction over the Petitioner, Mirian Ximena Abarca Tixe, pending resolution of her constitutional challenge to her confinement under 28 U.S.C. § 2241.

The August 26, 2025, Order unequivocally mandated that if the government intended to move the Petitioner, it must provide "advance notice of the intended move," filed in writing on the docket, stating the reasons, and observing a "period of at least 72 hours" before the movement occurred.

In defiance of this unambiguous judicial command, the Respondents executed an unauthorized, non-notified, and non-docketed transfer of Ms. Abarca Tixe thousands of miles

away. Having previously been placed at the Elizabeth Contract Detention Facility in New Jersey pursuant to an agreement between the parties (due to lack of appropriate bed space in Massachusetts) (*see* Doc. No. 8, Rule 7.1 Certification),[1] the Respondents suddenly and without warning transferred the Petitioner to the Port Isabel Detention Center in South Texas. This action represents a calculated effort to manipulate detention location to sever counsel access and, thereby, unilaterally extinguish the Court's jurisdiction over the habeas petition.

The sheer geographic extremity of the transfer—from the Northeast Corridor to the southernmost tip of Texas—is not merely an administrative inconvenience; it is a significant logistical challenge. It is an aggressive administrative strategy intended to destroy the efficacy of counsel access and render effective judicial review impossible. This deliberate undermining of the Court's process cannot be permitted to stand.

Accordingly, Petitioner seeks extraordinary relief: an immediate Temporary Restraining Order halting any further movement or removal, coupled with a mandatory injunction compelling the immediate return transfer of Ms. Abarca Tixe to the status quo location agreed upon by counsel, which is reasonably accessible to the Massachusetts legal team.

### III. PROCEDURAL AND FACTUAL BACKGROUND
#### a. The Assertion of Judicial Authority and Protective Order

Petitioner filed her petition for a writ of habeas corpus on August 26, 2025, challenging her detention as unlawful under the Constitution and laws of the United States. Recognizing the urgency and the potential for agency action to frustrate judicial review, the Court issued Doc. 4 on the same day, August 26, 2025.

---

[1] "Specifically, Respondents intend to transfer Petitioner to Delaney Hall, 451 Doremus Avenue, Newark, New Jersey, 07105. Respondents do not contest that this Court would retain presumed jurisdiction1 and venue over this habeas petition after this transfer… I hereby certify that I spoke with Elizabeth Shaw, counsel for Petitioner, to inform her of this potential transfer. Counsel for Petitioner informed me that she will not file an opposition to this motion if it is agreed that this Court will retain jurisdiction over the habeas petition."

The Order contained a pivotal jurisdictional finding regarding the Court's authority to act. The Court explicitly recognized that while subject-matter jurisdiction in habeas cases is paramount, a federal court "always has jurisdiction to determine its own jurisdiction." Relying on the principles established in *United Mine Workers,* 330 U.S. 258, 293 (1947) and *US v. Shipp*, 203 U.S. 563, 573 (1906), the Court affirmed its inherent power to issue an order to preserve the status quo. The Order articulated that such preservation is valid unless and until overturned, particularly when the failure to restrain the activity "would otherwise destroy its jurisdiction or moot the case." This foundational judicial finding directly addressed and preemptively defended the Court's authority against the exact jurisdictional-stripping tactic subsequently employed by the Respondents. Further, in the Respondents' only Notice of Transfer to this court, which the Plaintiff agreed upon before filing, was for the explicit purpose of necessity, with proximity to counsel of the utmost importance in conversations between counsel when coming to this agreement. Further, Respondents conceded that this Court should retain jurisdiction over this matter despite the movement of the Plaintiff out of the District. *See* Doc. No. 4. ("Respondents do not contest that this Court would retain presumed jurisdiction1 and venue over this habeas petition after this transfer.") No such filing has been made in this transfer of the Plaintiff thousands of miles away from her family and legal counsel.

### b. Respondents' Unambiguous Obligations Under the Stay

Paragraph 3(a) of the August 26, 2025 Order imposed three essential, non-negotiable requirements upon the Respondents concerning Ms. Abarca Tixe:

1. <u>Advance Written Notice and Justification</u>: Respondents were required to provide "advance notice of the intended move," filed in writing on the docket in this proceeding, which must specifically "state the reason(s) why the government believes such a movement is necessary and should not be stayed pending further court proceedings."

5

2. <u>Mandatory 72-Hour Delay</u>: Petitioner was explicitly protected by an instruction that she "shall not be moved out of this District for a period of at least 72 hours from the time the government dockets the notice described in this paragraph."

3. <u>Prohibition of Removal</u>: Petitioner was forbidden from being "deported, removed, or otherwise transferred outside the United States until further Order of this Court."

These terms were absolute and provided no discretion to the Executive Branch to unilaterally waive the notice and delay requirements.

    **c. The Establishment of the Status Quo and the Contemptuous Violation**

Although the petition initially alleged confinement in the District of Massachusetts, counsel for both parties mutually agreed that Ms. Abarca Tixe would be detained at the Elizabeth Detention Center in New Jersey. This arrangement was made necessary due to documented capacity limitations for female ICE detainees within the physical confines of the District of Massachusetts. The Elizabeth Detention Center, therefore, represented the protected, mutually established *status quo* detention location accessible to Massachusetts counsel for the purposes of this ongoing federal litigation.

On October 13, 2025—today—counsel learned that Respondents, without any prior communication or documentation filed on the docket, transferred the Petitioner from Elizabeth Detention Center, NJ, to the Port Isabel Detention Center in Texas. This action constitutes a direct and complete violation of the August 26, 2025 Order. There was no notice filed on the docket; there was no articulation of reasons for necessity; and, most significantly, there was no observance of the mandatory 72-hour judicial stay. The intentional failure to comply with these clear procedural safeguards demonstrates willful contempt for the authority of this Court.

    The timeline of events highlights this undisputed breach:

1. August 26, 2025, D. Mass. Judge Sorokin issues Order (Doc. 4) establishing explicit procedural requirements: advance notice, docketing, and a 72-hour stay on transfer out of district.
2. August 29, 2025, AUSA Farquar and Attorney Shaw spoke over the phone prior to the Respondent's filing of their Notice of Transfer (Doc. 8), where Attorney Shaw agreed to transfer to the nearest available detention center, and both confirming the importance of attorney access.
3. August 29, 2025, AUSAs Farquar and Sauter enter appearances on behalf of the Respondent, and AUSA Farquar files the Respondents Notice of Transfer to Elizabeth, NJ, which was previously agreed upon. This established agreed-upon *status quo* detention location is accessible to Massachusetts counsel.
4. On September 9, 2025, September 9, 2025, the Respondents filed a response to the Habeas Corpus petition, and raised no notice of further transfer, but instead disingenuously stated that the Plaintiff did not name her immediate custodian in her initial habeas complaint now that she was at the Elizabeth, New Jersey ICE Detention Center, after spending multiple weeks in the basement of the ERO Burlington Offices in temporary lockup without attorney access. *See* Doc. 9 ("A habeas petitioner must also name her immediate custodian as a respondent to the action, not a supervisory agency official, because a writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. Here, Petitioner did not name her immediate custodian, and Petitioner fails to carry her burden that her detention by U.S. Immigration and Customs Enforcement ("ICE") for the purpose of effectuating her final order of removal violates the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. Thus, the Petition should be denied.")
5. On September 16, 2025, Mass. Judge Sorokin issues Order (Doc. 10) transferring the case to Judge O'Toole. When a case is judicially transferred under Local Rule 40.1(g) in the District of Massachusetts, prior judicial orders remain in effect unless the new judge modifies or vacates them. A transfer of a case to a new judge does not automatically reset or cancel previous rulings; instead, it grants the receiving judge authority over all future proceedings.

6. On September 23, 2025, Petitioner filed a response to the Respondents as well as a modified writ of habeas corpus, naming the Warden of Elizabeth Contract Detention Facility as a named Respondent. *See* Docs. 12, 13.

7. On October 13, 2025, Counsel learned of the transfer of the Petitioner to Port Isabel Detention Center in Texas, thousands of miles from the agreed-upon detention facility in Elizabeth, NJ—violation: Transfer executed without advance notice, without reasons, and without observing the 72-hour delay.

8. On October 13, 2025, undersigned counsel reached out to both AUSA Farquar and Sauter to alert them to this violation but has yet to receive a response.

### IV. LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDERS AND MANDATORY RELIEF

The standard for granting temporary restraining orders and preliminary injunctions in the First Circuit is well-established, requiring the movant to demonstrate satisfaction of four traditional factors:

1. A strong likelihood of success on the merits;
2. That the applicant will suffer irreparable harm without the injunction;
3. That the balance of hardships tips decidedly in favor of the applicant; and
4. That the injunction is consistent with the public interest.

The Supreme Court, in *Winter v. Natural Resources Defense Council*, Inc., 555 U.S. 7 (2008), reaffirmed that these four factors are necessary requirements, shifting away from more flexible approaches that merely balanced the chance of success against the severity of the injury. Therefore, the Petitioner must make a clear showing on each point.

Furthermore, the relief requested here—the physical return of the Petitioner—is a mandatory injunction, which requires compelling the Respondents to undertake an affirmative act, rather than merely restraining future actions. While such relief imposes a higher burden than a purely prohibitory order, it is entirely appropriate where, as here, the affirmative action is necessary to cure a contemptuous act and restore the lawful conditions that existed prior to the

violation. The necessity of restoring the judicial process warrants this extraordinary, compulsory remedy.

### V. ARGUMENT: ALL FOUR INJUNCTIVE FACTORS COMPEL THE ISSUANCE OF A MANDATORY TEMPORARY RESTRAINING ORDER
#### a. Likelihood of Success on the Merits: Respondents' Clear Contempt

Petitioner has demonstrated a strong likelihood of success on the merits based on the Respondents' undisputed violation of a clear judicial Order. The merits of this emergency motion rest squarely on the question of whether the Respondents complied with Doc. 4, not yet on the merits of the underlying habeas petition itself.

The requirements set forth in Paragraph 3(a) of the August 26, 2025 Order were procedural prerequisites to any transfer. The Respondents ignored all three: they provided zero notice, offered no justification for necessity, and conducted the transfer immediately, circumventing the mandatory 72-hour delay intended to allow judicial review or objection by counsel. This wholesale disregard for a specific, protective court order constitutes a prima facie demonstration of willful failure to comply with judicial authority.

A federal court possesses the inherent authority to enforce its own orders, and a party's calculated attempt to frustrate the judicial process by violating a standing order provides powerful justification for injunctive relief. Respondents' decision to move the Petitioner thousands of miles, rather than to another facility closer to the First Circuit (such as one in New York or Pennsylvania), suggests that the action was not driven by simple administrative necessity but rather by the specific intent to make Massachusetts counsel ineffective and compromise the 'immediate custodian' jurisdictional requirement.

While the immediate custodian of the Petitioner is now located in Texas, thereby potentially shifting the geographical basis for habeas jurisdiction pursuant to the *Braden* standard, this jurisdictional complication does not negate the Court's authority to act on this Motion. The

Court established its authority to maintain the status quo to preserve its ability to "determine its own jurisdiction." The principle is clear: a court order issued to protect jurisdiction or prevent the mooting of a case is valid and enforceable against contemptuous action, even if the underlying subject-matter jurisdiction is later challenged. Thus, Petitioner's likelihood of success is predicated on the necessity of enforcing the Court's explicit mandate against the deliberate obstruction implemented by the Respondents.

### b. Irreparable Harm: Severance from Counsel and Jeopardy to Judicial Review

Ms. Abarca Tixe will suffer immediate, specific, and irreparable harm if the mandatory injunction compelling her return is not granted. This harm is logistical, financial, and constitutional.

First, the transfer effectively severs the established attorney-client relationship. The ability of Petitioner's Massachusetts counsel to consult, prepare, and effectively represent her in a complex federal habeas challenge is dependent on reasonable access. Moving her thousands of miles to a remote facility in South Texas imposes prohibitive logistical and financial burdens on counsel, rendering representation "futile" and denying Ms. Abarca Tixe the effective assistance of counsel critical to challenging her continued deprivation of liberty. The loss of the ability to communicate confidentially and prepare for litigation in the forum where jurisdiction was properly established constitutes an irreparable injury to her due process rights, which apply to all persons within the jurisdiction of the United States, citizens and non-citizens alike.

Second, the unauthorized transfer places Ms. Abarca Tixe in immediate and heightened jeopardy of removal. The original Order contained an explicit prohibition: Petitioner "shall not be deported, removed, or otherwise transferred outside the United States until further Order of this Court." Given the Port Isabel Detention Center's operational proximity to the border and its role

in removal logistics, her continued presence there elevates the risk of an impulsive administrative deportation, which would moot the habeas petition entirely and extinguish any possibility of judicial review.

The injury resulting from this contemptuous act is neither speculative nor merely "unfortunate;" it is a deliberate obstruction of the fundamental right to challenge confinement in a court of law.

### c. Balance of Harms: Upholding Court Integrity v. Administrative Convenience

The balance of harms tips decisively in favor of the Petitioner. On one side, Ms. Abarca Tixe faces the complete loss of her ability to pursue a constitutional challenge to her detention, the severance of her attorney-client relationship, and the risk of immediate deportation. These are profound, liberty-based injuries.

On the other side, the Respondents face the administrative inconvenience and logistical cost of reversing a transfer that they initiated in knowing disregard of a direct judicial order. The burden on the Respondents is entirely self-created and results from their own institutional contempt.

The equities weigh heavily against a party that violates a court order for the specific purpose of attacking the Court's jurisdiction and forcing the case into mootness. To permit the Respondents' contempt to stand would reward bad faith conduct and signal to executive agencies that judicial protective orders are merely suggestions that aggressive administrative tactics can override. The administrative burden of reversing an unlawful transfer is a justifiable and necessary consequence for violating a protective order, ensuring that the integrity of the judicial process is prioritized over governmental efficiency.

### d. The Public Interest: Enforcement of Judicial Authority

The public interest is served not merely by protecting the rights of an individual detainee, but by upholding the constitutional authority of the federal judiciary. The court's power to preserve conditions while determining its own jurisdiction is a matter of fundamental judicial self-preservation.

Furthermore, the Petitioner, Ms. Abarca Tixe, is neither charged nor convicted of any criminal offense that would subject her to mandatory detention, and her family has faithfully complied with their Order of Supervised Release since entering the United States in 2021, further highlighting the outrageous and punitive nature of the current detention. She is also the primary provider for a young child, and her ongoing, distant detention, which ICE appears to be using as a punitive tool to coerce her to depart before the administrative end of her removal proceedings, is detrimental to her family and to the underlying constitutional right to challenge her confinement. Due process mandates that detention must be narrowly tailored to achieve a legitimate government purpose. Allowing the government to use distance as a tool to separate a parent from a child and pressure them to depart undermines the due process rights applicable to all persons within the jurisdiction of the United States.

Habeas corpus is a central mechanism of American law, guaranteed by the Suspension Clause of the Constitution, Article I, Section 9, Clause 2. Allowing a federal agency to successfully employ a tactic designed to nullify the Court's oversight by violating a clear protective order amounts to granting the Executive Branch an effective veto over judicial review.

The preservation of the constitutional structure demands that the judiciary be capable of enforcing its own orders against other branches of government. A mandatory injunction compelling the return of the Petitioner defends the Court's institutional role and ensures that executive agencies cannot circumvent judicial oversight through unilateral administrative transfer.

The public interest demands that the rule of law prevail, requiring the immediate restoration of the status quo that the Respondents unlawfully destroyed.

### VI. THE MANDATORY INJUNCTION: REQUIRING IMMEDIATE RETURN TO STATUS QUO

Because the irreparable injury to the Petitioner—the loss of access to counsel and the loss of local jurisdiction—stems directly from the unauthorized physical transfer itself, a simple prohibitory injunction preventing *further* movement is inadequate. The injury can only be cured by compelling the Respondents to undertake affirmative action: the immediate return of the Petitioner.

Federal courts possess the authority to issue mandatory injunctions compelling the return of detainees where transfers are executed in defiance of standing orders and threaten the viability of a habeas petition. This relief is not merely punitive but remedial, necessary to restore the integrity of the judicial proceedings that were actively subverted.

Pursuant to Federal Rule of Civil Procedure 65(d), an injunction or restraining order must be "specific in terms" and "describe in reasonable detail" the acts required. Therefore, the mandatory relief must specify the needed immediate action: the initiation and completion of Ms. Abarca Tixe's transfer back to the facility agreed upon by counsel, Elizabeth Detention Center, NJ, within a firm and short deadline to counteract the time lost by the Respondents' contempt.

### VII. WAIVER OF SECURITY REQUIREMENT (FED. R. CIV. P. 65(C))

Petitioner respectfully requests that this Court waive the requirement of providing security under Federal Rule of Civil Procedure 65(c). Rule 65(c) permits the court to waive security "for good cause shown." Good cause exists for waiver in this matter based on two compelling factors.

First, the Petitioner is an indigent non-citizen detainee pursuing a constitutional writ of habeas corpus challenging the lawfulness of her custody. Requiring an individual challenging

governmental detention to post security would impose an undue and potentially insurmountable financial barrier, effectively denying access to justice. Courts routinely waive fees and costs, including security requirements, for indigent parties seeking protective orders and asserting fundamental rights.

Second, this action is a constitutional challenge against the U.S. government, not a commercial dispute. The purpose of the injunction is to enforce a prior protective order and safeguard constitutional processes, not to restrain the Respondents from a potentially profitable economic activity for which damages might accrue. Furthermore, the United States is statutorily exempt from security requirements under Rule 65(c); fairness dictates that the indigent detainee challenging the government's action should also be exempt from this cost.

## VIII.   CONCLUSION AND PRAYER FOR RELIEF

Respondents have exhibited a complete and willful disregard for a protective Order of this Court, thereby necessitating this emergency intervention. Their actions threaten to moot the Petitioner's claim, compromise her constitutional right to counsel, and undermine the authority of the federal judiciary.

For the reasons set forth herein, Petitioner Mirian Ximena Abarca Tixe respectfully prays for an immediate Emergency Temporary Restraining Order and Mandatory Injunction requiring:

1. Respondents and all persons acting in active concert or participation with them to immediately cease and desist from transferring, removing, or deporting Petitioner from the Port Isabel Detention Center, TX, or any other facility.

2. Respondents shall immediately initiate and execute the transfer of Petitioner back to the Elizabeth Detention Center, NJ, or another facility readily accessible to Massachusetts counsel, within 72 hours of this Order.

3. Waiver of the security requirement under Rule 65(c).

4. Setting of a prompt hearing for a Preliminary Injunction.

                                          Respectfully Submitted,
                                          Mirian Ximena Abarca Tixe
                                          By Her Attorney

                                          /s/ Elizabeth Shaw
                                        _____
                                        Elizabeth Shaw, Esq. | BBO #: 713541
                                        Law Offices of Rachel L. Rado, LLC
                                        175 Portland Street, 2nd Floor.
                                        Boston, MA 02114
                                        (t) 617-871-6030 | (f) 877-246-8795
Date: 10/13/2025                  (e) eshaw@rachelradolaw.com

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Mirian Ximena Abarca Tixe, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Motion for Temporary Restraining Order and Mandatory Injunction are true and correct to the best of my knowledge.

Dated this __13__ day of __Oct.__, 2025.

/s/ Elizabeth Shaw
_____
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com

## CERTIFICATION UNDER RULE 7.1

Due to the emergent nature of this Emergency Motion for Temporary Restraining Order and Mandatory Injunction, I have emailed AUSAs Farquar and Sauter at their emails to alert them to the Respondent's violation. I anticipate that, due to the Federal Holiday, they will be away from the office and will not respond today.

Date: 10/13/2025                                  /s/ Elizabeth Shaw
                                                   _____
                                                   Elizabeth Shaw, Esq. | BBO #: 713541
                                                   Law Offices of Rachel L. Rado, LLC
                                                   175 Portland Street, 2nd Floor.
                                                   Boston, MA 02114
                                                   (t) 617-871-6030 | (f) 877-246-8795
                                                   (e) eshaw@rachelradolaw.com