**Elizabeth Shaw, Esq. | BBO #: 713541**
**Law Offices of Rachel L. Rado, LLC**
**175 Portland Street, 2nd Floor.**
**Boston, MA 02114**
**(t) 617-871-6030 | (f) 877-246-8795**
**(e) eshaw@rachelradolaw.com**

Attorney for Petitioner

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRIAN XIMENA ABARCA TIXE,<br><br>　　　　Petitioner<br><br>v.<br><br>PATRICIA HYDE, et al.<br><br>　　　　Respondents | Case No. 25-12365<br><br>**PLAINTIFF'S MOTION FOR JUDICIAL INTERVENTION** |

### I.     INTRODUCTION

Petitioner, through undersigned counsel, respectfully moves for judicial intervention to enforce this Court's October 22, 2025 Opinion and Order (Doc. No. 20) and its subsequent denial of Respondents' Motion to Modify (Doc. No. 23). Despite the Court's unambiguous directive that Petitioner "be immediately returned to a proper facility located within the District of Massachusetts," Respondents have continued to fail, and even refuse, to comply.

Counsel for Respondents has further indicated that ICE does not intend to act on the Court's orders until it can request an expedited decision on the underlying habeas petition. That position reflects a deliberate refusal to obey a binding judicial order. It directly threatens both Petitioner's constitutional due process rights and the Court's inherent authority to ensure compliance with its own judgments.

Respondents' continued defiance of the Court's orders—now more than a week after the Court's clear instruction—necessitates direct judicial enforcement. Petitioner therefore respectfully requests that the Court:

1. Order the Respondents to show cause immediately why they should not be held in contempt for failure to comply with the Court's orders;

2. Direct ICE to return Petitioner to the District of Massachusetts forthwith; and

3. Impose such sanctions or coercive measures as the Court deems necessary to compel full and prompt compliance.

## II.   BACKGROUND

On October 22, 2025, the Court issued an Opinion and Order (Doc. No. 20) granting Petitioner's motion for clarification and directing Respondents to "immediately return the petitioner to a proper facility located within the District of Massachusetts." Two days later, a far cry from "immediately," on October 24, 2025, Respondents filed a Motion to Modify (Doc. No. 21), seeking permission instead to transfer Petitioner to a detention center in New Jersey, citing lack of female bed space in Massachusetts. On October 27, 2025, this Court denied Respondents' motion. The denial reaffirmed that the October 22 Order remains in full effect and that Petitioner must be returned to Massachusetts forthwith.

As of the filing of this motion, Respondents have not complied. Petitioner remains detained at a facility outside the District—apparently still in Texas—and Respondents have taken no discernible steps to effectuate transfer in accordance with the Court's directives. Counsel for Petitioner conferred with government counsel regarding compliance on October 28, 2025. Respondents' counsel informed the undersigned counsel that ICE does not plan to transfer the

Petitioner until the government files—and the Court resolves—a potential forthcoming motion seeking an expedited ruling on the underlying habeas petition.

Respondents' position effectively conditions compliance with the Court's standing orders on their own litigation strategy—an approach that nullifies the force of those orders and undermines both the Court's jurisdiction and Petitioner's access to justice.

### III. ARGUMENT

#### a. The Court Has Inherent Authority to Enforce Its Own Orders

It is a fundamental principle of American jurisprudence that "courts are vested with the inherent power to enforce compliance with their lawful orders." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991). This inherent power includes both civil and criminal contempt sanctions to ensure that judicial orders are not mere suggestions, stating that there "can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

In *Devitri v. Cronen*, Chief Judge Saris granted a preliminary injunction staying removal after finding that, absent a judicial stay, petitioners were likely to be deported before their motions to reopen and stay could be considered, and that the administrative process was inadequate to protect their rights. 289 F. Supp. 3d 287, 300–01 (D. Mass. 2018) (explaining that "absent a judicial stay … it is likely that Petitioners will be deported … before their motions to stay and motions to reopen are considered," and describing the BIA's process as "Kafkaesque" where a stay may be decided only with the motion to reopen) (internal citations omitted).

*Devitri* thus stands for the proposition that when agency practice or posture would evade or nullify effective judicial relief, the Court should intervene to preserve its jurisdiction and protect due process, notwithstanding governmental logistics or preferences. *See id.* at 300–04 (finding the

BIA procedures inadequate to safeguard petitioners' statutory and constitutional rights and exercising habeas/federal-question jurisdiction). Applied here, Respondents' refusal to comply with the Court's existing orders (and their attempt to condition obedience on a future expedited ruling) similarly threatens to render the Court's relief illusory. As in *Devitri*, judicial enforcement is warranted to ensure that the Court's directives have a practical effect and that the Petitioner's access to this Court and to counsel is not undermined by executive intransigence.

### b. Respondents' Continued Noncompliance Constitutes Willful Defiance

The October 22 and October 28 Orders are clear and specific. Respondents' failure to act in accordance with them constitutes willful defiance of a lawful judicial directive. The First Circuit has long held that courts cannot function if parties are permitted to ignore judicial commands. *See Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 916 (1st Cir. 1988) ("[c]ourts cannot function if litigants may, with impunity, disobey lawful orders").

The Federal Rules of Civil Procedure reinforce and augment the inherent power of district courts to sanction noncompliance, including dismissal or contempt, when judicial orders are disregarded. *Young*, 330 F.3d at 81; Fed. R. Civ. P. 37(b), 41(b). While dismissal is reserved for extreme misconduct, disobedience of court orders may constitute extreme misconduct. *Young*, 330 F.3d at 81; *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002); *Cosme Nieves v. Deshler*, 826 F.2d 1, 2 (1st Cir. 1987).

That principle applies with particular force in this case. Respondents' refusal to execute the Court's explicit command to return Petitioner to Massachusetts—after unsuccessfully seeking to modify that order—demonstrates disregard for the Court's authority and constitutes the type of extreme misconduct that warrants judicial intervention and coercive enforcement. Administrative

burden or disagreement with the Court's ruling does not excuse noncompliance. See *United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947) (holding that parties must comply with judicial orders "however erroneous" they believe them to be until stayed or reversed).

### c. The Government Cannot Condition Compliance on Its Own Future Motions

The Respondents' assertion that they will not comply until they file and obtain a ruling on an expedited habeas motion impermissibly shifts control of judicial enforcement from the Court to the Executive Branch. The judiciary, not the executive, determines the timing and scope of compliance with court orders.

In *Nken v. Holder*, 556 U.S. 418, 427 (2009), the Supreme Court underscored that "a stay is not a matter of grace; it is an exercise of judicial power." Respondents' posture here inverts that principle by treating compliance as discretionary until they obtain further judicial action. Similarly, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015), addressed ICE's use of detention policies that effectively preempted individualized judicial review. The court found that government practices designed to circumvent or delay court oversight violated both due process and separation-of-powers principles, explaining that the "cannot suffer harm from an injunction that merely ends an unlawful practice"). Id. at 191.

That reasoning applies squarely here. ICE's refusal to comply until it secures an expedited habeas ruling subverts this Court's authority and delays judicial relief in precisely the way *R.I.L-R* condemned. Courts cannot allow executive agencies to condition compliance on their own terms or timing without eroding the judiciary's constitutional role.

### d. Deferring Compliance Violates Petitioner's Due Process Rights

Petitioner's continued confinement outside Massachusetts deprives her of meaningful access to counsel and effective participation in her habeas case. The Supreme Court has long held that detained individuals must have a reasonably adequate opportunity to pursue their claims and communicate with counsel. See *Bounds v. Smith*, 430 U.S. 817, 821–25 (1977); *Procunier v. Martinez*, 416 U.S. 396, 413, 419 (1974) (attorney-client communications may not be burdened beyond what is necessary for legitimate governmental interests).

Federal courts have applied these principles in the immigration context where government transfer or detention practices impede access to counsel or judicial review. See *Rios-Berrios v. INS*, 776 F.2d 859, 862–63 (9th Cir. 1985) (reversing denial of continuance where the government's actions and distance thwarted the noncitizen's ability to retain and consult with counsel); *Devitri v. Cronen*, 289 F. Supp. 3d 287, 300–04 (D. Mass. 2018) (finding that without judicial intervention, petitioners were likely to be removed before motions to reopen and stays could be considered, and concluding that court intervention was necessary to preserve meaningful review). These authorities recognize that executive action cannot be administered in a way that effectively forecloses meaningful access to the courts. *See also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (immigration detention is subject to due-process limits and judicial supervision). Applied here, keeping Petitioner far from this District and her Massachusetts counsel, in the face of orders requiring her return, unreasonably burdens her ability to litigate her habeas claims and violates due process.

### e. The Court's Inherent and Statutory Authority Requires Immediate Intervention

The All Writs Act, 28 U.S.C. § 1651(a), authorizes federal courts to issue writs needed to protect their jurisdiction and ensure the effectiveness of their orders. *See Chambers v. NASCO*,

*Inc.*, 501 U.S. 32, 43–46 (1991) (courts possess inherent power to fashion appropriate sanctions to enforce compliance). Courts have used this authority where agency conduct would frustrate or nullify judicial relief. *See In re United States*, 503 F.3d 638, 641–42 (7th Cir. 2007) (discussing mandamus and emphasizing that executive disagreement with a court's directive does not defeat the court's authority to require compliance); *United States v. City of Jackson, Miss.*, 318 F.2d 1, 3–4 (5th Cir. 1963) (rejecting attempts to sidestep injunctive orders and recognizing courts' power to ensure their decrees have practical effect). Because Respondents have conditioned obedience to existing orders on their own future motion practice, intervention under the All Writs Act—and, if necessary, coercive sanctions—is warranted to preserve this Court's jurisdiction and ensure that its prior rulings are implemented.

### IV.    REQUEST FOR RELIEF

Petitioner respectfully requests this court:

1. Order Respondents to appear and show cause immediately why they should not be held in civil contempt for failure to comply with this Court's October 22, 2025 Order;

2. Direct Respondents to return Petitioner to the District of Massachusetts within 48 hours of this Court's ruling on this motion;

3. Prohibit Respondents from conditioning compliance on any pending or future motion regarding the underlying habeas petition;

4. Authorize coercive sanctions, including daily monetary fines or other remedial measures, until full compliance is achieved; and

5. Grant such further relief as the Court deems just and proper to enforce its authority and protect Petitioner's due process rights.

Respectfully Submitted,
Mirian Ximena Abarca Tixe
By Her Attorney

//s// *Elizabeth Shaw*
_____
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com

Date: 10/28/2025

8

## **CERTIFICATION UNDER RULE 7.1**

On October 28, 2025, I spoke with AUSA Rayford Farquahar, and he indicated that his clients have not made any efforts to comply with this Court's order and are actively seeking alternative motions or measures to evade compliance.

Date: 10/28/2025

//s// *Elizabeth Shaw*
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com