**Elizabeth Shaw, Esq. | BBO #: 713541**
**Law Offices of Rachel L. Rado, LLC**
**175 Portland Street, 2nd Floor.**
**Boston, MA 02114**
**(t) 617-871-6030 | (f) 877-246-8795**
**(e) eshaw@rachelradolaw.com**

*Attorney for Petitioner*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRIAN XIMENA ABARCA TIXE,<br><br>Petitioner<br><br>v.<br><br>PATRICIA HYDE, et al.<br><br>Respondents | Case No. 25-12365<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HABEAS CORPUS PETITION** |

Petitioner Mirian Ximena Abarca Tixe has been held in unlawful and punitive civil detention by U.S. Immigration and Customs Enforcement ("ICE") since August 26, 2025, despite a continuing judicial stay of removal, an active appeal before the Board of Immigration Appeals, and the agency's own acknowledgment that no proper detention facility exists in Massachusetts.

Her confinement violates the Fifth Amendment's due process guarantees and exceeds ICE's statutory authority. ICE admits that Ms. Abarca Tixe is detained in the basement of its Burlington Field Office, a facility "not designed for long-term detention," where attorney visitation is prohibited and cells consist of an 8-by-10-foot space containing only a toilet. No individualized finding has ever been made that she poses a flight risk or danger—the statutory predicates for continued detention under 8 U.S.C. § 1231(a)(6). ICE has further ignored readily available Alternatives to Detention (ATD), such as GPS supervision or periodic reporting, despite explicit

inquiry from Petitioner's counsel on October 28, 2025. This silence confirms that her confinement serves no regulatory purpose and instead functions as a punitive measure intended to coerce and retaliate against her.

Under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and this Court's precedents in *Jimenez v. Cronen, Nguyen v. Brophy,* and *Reid v. Donelan*, civil detention becomes unconstitutional once it ceases to be reasonably related to removal. Ms. Abarca Tixe's ongoing confinement—without risk assessment, lawful facility, or justification—has crossed that line. The Court should grant the writ of habeas corpus and order her immediate release or, alternatively, a prompt bond hearing.

## I.    INTRODUCTION

Petitioner, Mirian Ximena Abarca Tixe ("Petitioner" or "Ms. Abarca Tixe"), respectfully submits this brief in support of her Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Her continued detention by U.S. Immigration and Customs Enforcement ("ICE") is punitive, coercive, and unconstitutional.

## II.    BACKGROUND

### a.    The August 26, 2025, Arrest and Detention

On August 26, 2025, ICE arrested Ms. Abarca Tixe during a short-notice check-in to execute her removal order, despite express representations to her counsel that "no one would be detained" and that the check-in was solely to establish a departure plan. No departure plan had yet been issued, yet ICE detained her for failing to produce a plane ticket—one she had never been instructed to obtain—<u>after</u> fitting her with a GPS only thirty (30) minutes prior.

Immediately upon detention, ICE officers explained to counsel who was present at the arrest that she was detained because it was "more likely" her husband would buy departure tickets for the family unit if she were detained than if she were free—even though they were called in to

establish a departure plan, not effectuate it. That statement exposes punitive intent and coercive motive, violating the due process limits on civil detention as outlined in *Bell v. Wolfish*, 441 U.S. 520, 538–39 & n.20 (1979).

### b. Government Noncompliance and Court Intervention

Immediately following her arrest, this Court issued a stay of transfer or removal on August 26, 2025, prohibiting the Petitioner's transfer without advanced notice. ICE then, with Petitioner's consent, moved her to Elizabeth, New Jersey, due to the stated lack of bed space in Massachusetts <u>after</u> providing notice to this Court. Many weeks later, while the August 26, 2025, order was still in effect, ICE transferred her out of state to Robstown, Texas, without notice—conduct that this Court later found to be unlawful. On October 22, 2025, the Court issued an order directing that Petitioner "be immediately returned to a proper facility located within the District of Massachusetts." Two days later, the Respondents sought modification, citing a lack of female bed space. The Court denied the motion on October 27, 2025, confirming the order to return her to Massachusetts immediately.

### c. Continuing Custody

It was not until October 31, 2025, that ICE reported that Ms. Abarca Tixe had been brought back into detention at the Burlington Field Office under § 1231—despite the Respondents admitting on the record that the Burlington Field Office is not a proper detention facility, a continuing judicial stay of removal, no scheduled removal date, or individualized flight risk or dangerousness assessment. This violates the Court's October 22 Order, which required her return to a "proper facility within the District of Massachusetts."

ICE itself concedes, via AFOD Chan's declaration, that Burlington *"is not designed for long-term detention"* and that *"no long-term detention facilities are available for her within the*

*state of Massachusetts."* Accordingly, the Petitioner is not being held in a proper detention facility as ordered, but in an administrative office that is incapable of lawful civil confinement. This admission demonstrates both non-compliance with the Court's order and the arbitrary nature of custody, showing that Petitioner's detention serves a punitive, rather than administrative, purpose.

Moreover, ICE has provided no determination under 8 U.S.C. § 1231 that Ms. Abarca Tixe is a flight risk or danger to the community—the statutory prerequisite for post-90-day detention. She was initially released on her own recognizance, not enrolled in any ATD program, and has never violated a condition of release. Her continued confinement, therefore, violates her due-process rights.

Additionally, the Petitioner has a pending T Nonimmigrant Derivative (T-visa) application with U.S. Citizenship and Immigration Services, which was filed in August 2024 and remains under adjudication. That application underscores that her immigration status remains active before USCIS and that removal is not imminent. ICE's insistence on maintaining detention despite a pending humanitarian visa petition further demonstrates the arbitrary and punitive nature of her confinement. *See* 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.11 (recognizing protection for trafficking victims and their qualifying relatives).

## III.    LEGAL ANALYSIS

### a.  Jurisdiction

ICE's filings confirm Petitioner is detained within this District, satisfying jurisdiction under *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

### b.  Due Process Violations

Under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), *Demore v. Kim*, 538 U.S. 510, 528-31 (2003), and *Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016) (vacated in part on other grounds by *Reid v. Donelan*, 22 F.4th 1 (1st Cir. 2021)), civil detention is constitutionally permissible only when it serves a legitimate, non-punitive, regulatory purpose. When detention becomes excessive, coercive, or arbitrary, or when confinement conditions are inconsistent with human dignity, it violates both substantive and procedural due process.

Ms. Abarca Tixe's detention is clearly inconsistent with human dignity. Here, ICE detained Ms. Abarca Tixe not to ensure removal or appearance, but to coerce her family into purchasing departure tickets—a plainly punitive purpose. Compounding the violation, she is held in the basement of ICE's administrative Field Office in Burlington, which ICE itself acknowledges "is not designed for long-term detention." Local reporting found that "ICE does not allow lawyer visitations with clients held at the Burlington Field Office," and that the holding cells are approximately 8 × 10 feet, containing nothing but a toilet—no beds, no sink, and no access to natural light.[1] These facts transform her custody into an unconstitutional deprivation of liberty under the Fifth Amendment.

The Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), articulated the constitutional test for evaluating whether detention conditions constitute punishment. Detention is permissible only if it "is reasonably related to a legitimate governmental objective" and does not represent "an exaggerated response" to administrative needs. *Id.* at 539 n.20. If confinement or its conditions are "arbitrary or purposeless," they are unconstitutional because they "amount to punishment." *Id.* at 538.

---

[1] See Wasser, Miriam, "ICE holding immigrants in 'abysmal' conditions at Burlington office building, lawyers say," WBUR (5 June 2025) https://www.wbur.org/news/2025/06/05/ice-burlington-immigration-detention-conditions

Although *Bell* arose from criminal pretrial detention, its framework has been adopted in the civil immigration context by *Zadvydas v. Davis, Demore v. Kim*, and *Reid v. Donelan*. Those decisions apply *Bell*'s rational-relationship principle to civil detention, holding that it must bear a reasonable relation to its regulatory purpose—ensuring appearance and effectuating removal. When the rational relationship breaks down, detention becomes punitive and violates the due process of law. *Zadvydas*, 533 U.S. at 690; *Reid*, 819 F.3d at 494; *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 23–25 (1st Cir. 2021) (government bears burden—clear and convincing for danger; preponderance for flight risk).

Here, ICE's detention of Ms. Abarca Tixe bears no rational relationship to any lawful objective. Removal is not imminent, as the Court's stay remains in place and no removal date has been set. There has been no individualized finding that she poses a danger or flight risk. Indeed, she had been previously released on her own recognizance and had complied with all reporting conditions (including reporting to the Framingham ICE Office with less than 24 hours' notice). Her confinement at the Burlington Field Office—a facility ICE concedes is not a proper detention site—further severs any rational connection to administrative necessity. The space is 8×10 feet, contains only a toilet, and lacks basic sanitation, beds, or access to counsel. These conditions serve no regulatory goal; they inflict severe hardship and humanitarian concerns. Moreover, ICE officers admitted to counsel present at the time of detention that she was detained because it was "more likely" her husband would purchase departure tickets before the conclusion of their immigration matters if she were detained. That justification is coercive and punitive, not regulatory, and squarely fails the *Bell* test.

In short, this is precisely the kind of "arbitrary and purposeless" restraint that *Bell* forbids. 441 U.S. at 538. No legitimate government interest—public safety, administrative order, or flight

prevention—supports confining a compliant, non-dangerous mother in an office basement with no access to her attorney or basic sanitary needs. Her detention is unconstitutional because it lacks any rational relationship to a lawful purpose.

Furthermore, in *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 633-34 (D. Mass. 2018), Judge Talwani held that the government may not detain individuals indefinitely when removal is not reasonably foreseeable, finding such detention violates the Fifth Amendment's guarantee of due process. The Court ordered release where removal was delayed and detention had lost its lawful justification. Similarly, in *Nguyen v. Brophy*, No. 20-cv-11387-LTS, 2020 WL 5905060, at 4 (D. Mass. Oct. 6, 2020), Judge Sorokin concluded that continued detention under such circumstances is unreasonable and contrary to the constitutional limits on civil detention. The court held that where a judicial stay prevents removal, detention is governed by § 1226(a)—not § 1231—and that detainees are entitled to individualized bond hearings.

Both cases reinforce that when detention is untethered from a foreseeable removal and unsupported by a danger or flight-risk determination, it becomes arbitrary and unconstitutional. Those principles in *Jimenez* and *Nguyen* directly control here: Ms. Abarca Tixe's removal is not imminent; a judicial stay remains in force; she is confined in inhumane and non-regulatory conditions that effectively deny access to counsel or basic human necessities; and ICE concedes that it lacks an appropriate facility within Massachusetts. Such detention is arbitrary, purposeless, and inconsistent with the government's limited detention authority. *Jimenez*, 317 F. Supp. 3d at 634; *Nguyen*, 2020 WL 5905060, at 4. **No administrative objective can justify holding a civil detainee in an 8-by-10-foot basement cell with only a toilet and no bed, cut off from her attorney and basic needs**. This confinement offends both the substantive and procedural components of due process and mandates her immediate release.

Moreover, Respondents' conduct invites a simple, dispositive question: If ICE itself asserts that no proper detention space exists in Massachusetts, and has never found Petitioner to be a flight risk or a danger, why has she not been released on an alternative to detention?

Congress expressly authorizes ICE to use Alternatives to Detention (ATD) under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5, including measures such as periodic reporting, GPS monitoring, or supervision. Courts have recognized that such tools fulfill the government's regulatory interest while avoiding unconstitutional confinement. *See Reid v. Donelan*, 819 F.3d 486, 499 (1st Cir. 2016) (requiring consideration of less restrictive means). Here, the government has offered no explanation for why Ms. Abarca Tixe—previously released on her own recognizance and fully compliant—cannot again be supervised through ATD. Petitioner's counsel explicitly inquired with Respondents' counsel on October 28, 2025, as to why she could not be released on such conditions. No response was ever provided. That silence, combined with ICE's admitted lack of lawful detention space, underscores the arbitrary and retaliatory nature of this confinement—confirming that it serves no regulatory purpose whatsoever.

### c. Statutory Misapplication

Respondents argue that detention is authorized under § 1231(a)(6) merely because the removal order is final. That misstates the law. Section 1231 applies only once the "removal period" begins, and under § 1231(a)(1)(B)(ii), that period does not begin while a judicial stay remains in force. Because this Court's August 26 Stay remains operative, detention is governed by § 1226(a), which provides for conditional release or bond hearings. See *Hernandez-Lara v. Lyons*, 10 F.4th 19, 47 (1st Cir. 2021). By continuing to detain Petitioner under § 1231(a)(6) despite an ongoing judicial stay, Respondents apply the wrong statute and strip Petitioner of her procedural rights to

review and release. Courts have repeatedly rejected such misapplications as unconstitutional. See *Nguyen*, 2020 WL 5905060, at *4*; *Jimenez*, 317 F. Supp. 3d at 633–34.

### d. Comparison to *Gomes v. Smith*, 381 F. Supp. 3d 120 (D. Mass. 2019)

In *Gomes*, Judge Gorton denied habeas relief because removal was imminent "but for the court's stay." *Id.* at 124. Here, the opposite is true: there is no removal date, no active removal plan, and ICE itself has stated that it lacks an appropriate facility in which to detain Petitioner lawfully. Where *Gomes* turned on imminent removal, this case turns on the absence of any foreseeable removal and on the punitive, coercive conditions that accompany it. Thus, the principles of *Gomes*—which favor administrative necessity only when removal is imminent— further confirm that Ms. Abarca Tixe's continued detention violates due process.

## IV. REQUESTED RELIEF

Petitioner respectfully requests that this Court:

1. Grant the writ of habeas corpus and order her immediate release;

2. Alternatively, order a bond hearing within seven (7) days, requiring the government to justify detention by clear and convincing evidence;

3. Declare her detention unlawful under the Fifth Amendment and 8 U.S.C. § 1226(a);

4. Retain jurisdiction to ensure compliance with its orders;

5. Recognition of Pending T-Visa Application:

   a. Acknowledge that Petitioner's T Nonimmigrant Derivative application, filed with USCIS in August 2024 and still pending, renders her removal non-imminent and provides an independent basis for continued judicial protection. The Court should consider this pending humanitarian relief as further evidence that detention serves no lawful purpose and that release is warranted under *Zadvydas*, 533 U.S. at 90.

6. Declaratory Relief:

    a. Declare that Respondents' conduct, including detention at the Burlington Field Office, disregard of judicial stays, and failure to make individualized findings, constitutes a pattern of unconstitutional conduct violating the Fifth Amendment. See *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 633 (D. Mass. 2018); *Calderon-Jimenez v. Nielsen,* 399 F. Supp. 3d 1 (D. Mass. 2018); *Savino v. Souza*, 453 F. Supp. 3d 441, 445–46 (D. Mass. 2020).

    b. Declaratory relief is proper under 28 U.S.C. § 2201 because an actual controversy exists, and the pattern of conduct is capable of repetition yet evading review. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Sosna v. Iowa*, 419 U.S. 393, 400–01 (1975).

7. Prospective Injunctive Relief:

    a. Enter a permanent injunction prohibiting Respondents, their officers, agents, and successors from: detaining Petitioner or any member of her immediate family unit absent an individualized determination of flight risk or danger; holding any member of that family in facilities not designed or authorized for long-term civil detention, including the Burlington Field Office; and taking any action inconsistent with this Court's August 26, 2025 Stay and October 22, 2025 Order.

    b. Such relief is warranted to prevent irreparable constitutional harm and to ensure compliance with due process and prior judicial orders. *See Calderon-Jimenez v. Cronen,* No. 18-10225-MLW, 2019 WL 7284989, at 1–3 (D. Mass. Dec. 24, 2019) (TRO ordering immediate release and compliance reporting); *Savino,* 453 F. Supp. 3d at 447–48, 453 (granting preliminary injunction to remedy unconstitutional

detention conditions); and 28 U.S.C. § 2202 (authorizing "further necessary or proper relief based on a declaratory judgment").

## V.     CONCLUSION

Ms. Abarca Tixe's detention—conducted in a facility ICE admits is unfit for custody, with no risk finding, no bond review, no bed, and no access to counsel—constitutes arbitrary, punitive, and unconstitutional confinement. Her removal is not imminent, no lawful purpose is served, and ICE's refusal to use available Alternatives to Detention, such as GPS monitoring or periodic reporting, directly violates the government's statutory and constitutional duty to employ the least restrictive means necessary. As *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001), makes clear, once detention ceases to serve a valid regulatory purpose, continued confinement constitutes a violation of the Due Process Clause. That principle applies with full force here.

For these reasons, this Court should grant the writ of habeas corpus, order Petitioner's immediate release, declare Respondents' conduct unlawful, and enjoin further unlawful detention of Petitioner and her family.

Respectfully Submitted,
Mirian Ximena Abarca Tixe
By Her Attorney


_____ /s/ Elizabeth Shaw _____
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
Date: _11/05/2025_     (e) eshaw@rachelradolaw.com

**Certificate of Service**

I hereby certify that on this day, a true and correct copy of the foregoing Petitioner's Supplemental Briefing in Support of Habeas Corpus Petition was served via the CM/ECF system upon counsel for Respondents.

Date:  _11/05/2025_                                   _____*/s/ Elizabeth Shaw*_____
                                                    Elizabeth Shaw, Esq. | BBO #: 713541
                                                    Law Offices of Rachel L. Rado, LLC
                                                    175 Portland Street, 2nd Floor.
                                                    Boston, MA 02114
                                                    (t) 617-871-6030 | (f) 877-246-8795
                                                    (e) eshaw@rachelradolaw.com